**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.   CASE NO. 3:11-cr-248(S2)-J-34TEM

DONALD MITCHELL

_____

**REPORT AND RECOMMENDATION**[1]

**I. Status**

This case is before the Court on the Authorized Third Motion to Suppress, filed by Defendant Donald Mitchell (Doc. #189, "Third Motion"). The Third Motion seeks suppression of "all communications made by the Defendant to Michele Taylor, Attorney at Law, during the course of and in anticipation of the representation of the Defendant" and "all evidence obtained subsequent to the aforesaid seizure and testimony as fruits of the poisonous tree." Third Motion at 1. The Government has responded in opposition to the sought relief (*see* Doc. #191, "Gov't Response").

The Third Motion was referred to the undersigned by the Honorable Marcia Morales Howard for issuance of a report and recommendation.[2] The Court held evidentiary hearings on December 19, 2012 and January 9, 2013. Transcripts of the proceedings have been filed (Docs. #200 and #209) (hereinafter referred to as "Tr. 1" and "Tr. 2", followed by

---

[1]As a matter of course, within fourteen (14) days after service of this document, specific, written objections may be filed in accordance with 28 U.S.C. § 636, Rule 59, Federal Rules of Criminal Procedure, and Rule 6.02, Local Rules, United States District Court, Middle District of Florida. Failure to file a timely objection waives a party's right to review. Fed. R. Crim. P. 59.

[2]Also at the request of Judge Howard, the undersigned issued a report and recommendation (Doc. #144, First Report and Recommendation) regarding the first and second motions to suppress Mitchell filed in this case.

the appropriate page number).³

Upon consideration of the argument from counsel and the evidence presented, the undersigned recommends the Authorized Third Motion to Suppress **be denied**.

## II. Background

Prior to indictment on the current federal criminal charges, Defendant Donald Mitchell (hereinafter referred to as "Defendant" or "Mitchell") had been arrested and incarcerated in Duval County Jail on grand theft charges filed by the State of Florida in December 2010. *See* First Report and Recommendation at 4-9. From April 2010 through at least January 2011, Mitchell's attorney was Ms. Amy Newby in Jacksonville, Florida. *Id.* at 4. On December 28, 2010, Mitchell was arrested on the warrants issued for the grand theft charges. *Id.* at 6. Information obtained from a joint investigation into Mitchell's activities by the Jacksonville Sheriff's Office, the Federal Bureau of Investigation and the Untied States Secret Service from July 2010 and beyond eventually led to the federal charges against Mitchell for fraud violations. *Id.* at 5. Evidence obtained through the joint investigation, and as a result of the December 28, 2010 arrest, forms the basis for Mitchell's motions to suppress.

On September 29, 2011, a grand jury returned a seven count Indictment (Doc. #1) charging with mail fraud, conspiracy to commit mail fraud, and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343, and 1349. The Indictment also alleges there is property, real or personal, that is subject to forfeiture pursuant to Title 18, United

---

³Also contained within the record are the transcripts of the two telephone calls between attorney Michelle Kalil Taylor and Donald Mitchell that were played during the evidentiary hearings (*see* Gov't Ex. 1A, Gov't Ex. 2A). The calls took place while Mitchell was incarcerated at the Duval County Jail on April 29, 2011.

States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The nature of the alleged fraud centers around an investment scheme devised, or intended to be devised, by Mitchell. A Superseding Indictment was returned on April 25, 2012 (Doc. #89) and a Second Superseding Indictment (Doc. #146) was returned on August 29, 2012. That Indictment reduced the number of counts, although the same statutory violations remain as were alleged in the original Indictment, and added Ms. Amy Newby, Esq., as a co-defendant.

Prior to the appointment of his current legal counsel, Mitchell was represented in this case by an Assistant Federal Public Defender and another private attorney appointed under the Criminal Justice Act, 18 U.S.C. § 3006A.[4] The first Criminal Justice Act attorney filed the two earlier motions to suppress evidence (Docs. #52, #55). The Court held evidentiary hearings on those motions, with current defense counsel, and issued the First Report and Recommendation (Doc. #144) to deny those motions to suppress. One of the issues included in the First Report and Recommendation was whether the recording of telephone conversations Mitchell had with attorney Newby, while in jail on December 31, 2010 and January 2, 2011, violated his attorney client privilege. The Court concluded that it did not. First Report and Recommendation at 9-10, 19-25.

Now, Defendant seeks to suppress any statements recorded in telephone conversations between himself and attorney Michelle Kalil Taylor ("Taylor") during Defendant's incarceration on State charges in April 2011. *See generally*, Third Motion. Defendant claims those conversations are privileged, raising two new issues concerning

---

[4]Initially, privately retained attorney Matthew Kachergus appeared as Defendant's counsel, but he quickly moved to withdraw from representation (*see* Docs. #8, -#13).

3

(1) a State court order allowing him to make telephone calls to try to obtain new counsel and (2) specific comments Taylor made that implied their telephone conversations were privileged. Third Motion at 2. The United States argues the recorded conversations fall outside the ambit of attorney-client privilege. *See generally*, Gov't Response. The undersigned finds the recorded phone calls are not privileged.

Upon consideration of all the evidence presented and the arguments made, the Court makes the following findings of fact and conclusions of law.

### III. Findings of Fact

On December 28, 2010, Donald Mitchell was arrested on two outstanding state warrants for grand theft. By that date, Mitchell had already come to the attention of local and federal law enforcement officials due to the monitoring of Mitchell's outgoing phone calls from the Duval County Jail that had begun in either July or August 2010. *See* First Report and Recommendation at 5. In January 2011, Mitchell posted bond on the grand theft charges and was released from jail. Gov't Response at 1. On February 7, 2011, Mitchell failed to appear for a court hearing on those charges, so a failure to appear warrant was issued. Mitchell was again arrested and transported back to the Duval County Jail on February 18, 2011. On April 13, 2011, the judge in Mitchell's state cases entered an order directing personnel at the Duval County Jail to allow Mitchell telephone and visitation privileges in order to contact possible new defense counsel in the grand theft cases. *See* Defendant's Ex. 3.

Mitchell later made contact with attorney Michelle Taylor, but Taylor testified she was never retained as Mitchell's legal counsel (Tr. 1 at 8). According to Taylor, Mitchell told her he was wealthy and he had friends of his contact her to verify he was financially able

to retain her. *Id.* at 8-9. Taylor testified she had contact with Mitchell for approximately two weeks in April 2011. *Id.* Taylor saw Mitchell in person at the jail and had contact with him by telephone. *Id.* The United States intends to use, and Mitchell seeks to suppress, the two phone calls initiated by Mitchell from the Duval County Jail to Michelle Taylor on April 29, 2011.

Calls made by inmates from the Duval County Jail to the outside world are routinely recorded. *See* First Report and Recommendation at 10. There is a prerecorded warning at the initiation of all calls from inmates in the jail that states the call is being recorded. Telephone communications between inmates and their attorneys can be exempted from the recording if the attorney requests to have his or her calls removed from the recording list. The removal from the recording list is based on the telephone number provided by the attorney to the jail custodian for the audio records. Generally, the telephone number provided by the attorney permanently remains as an exempt phone number from recorded calls. *See id.*

In August 2011, Mitchell pled guilty to one of the State's grand theft charges, and the second grand theft charge was thereafter dropped. First Report and Recommendation at 13. In September 2011, Mitchell was indicted by a federal grand jury on fraud charges (Doc. #1). Subsequently, two superceding indictments were returned. The Second Superseding Indictment (Doc. #146) alleges mail fraud and conspiracy to defraud by Mitchell and by Mitchell's former attorney, Amy Newby, whom he had retained to represent him on the grand theft charges referenced herein.

### IV. Analysis and Conclusions of Law

Motions to suppress evidence relevant to a criminal trial present mixed questions

of law and fact for the court's determination. *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (internal citations omitted). The individual moving for suppression of evidence bears the initial burden of persuading the court, through specific factual allegations and supporting evidence, that seizure of the evidence was illegal and that the evidence should therefore be suppressed. *United States v. Ross*, 827 F. Supp. 711, 716 (S.D. Ala. 1993) (citations omitted). "Once the movant has established a basis for his or her motion, the burden then shifts to the government to prove by a preponderance of the evidence that the seizure of evidence was legally and factually justified." *Id.* A circuit court of appeals reviews the district court's findings of fact under the clearly erroneous standard, but application of the law to those facts is subject to *de novo* review. *Tobin,* 923 F.2d at 1510.

**<u>The Attorney-Client Privilege Between Taylor and Mitchell</u>**

The attorney-client privilege has been referred to has the "bedrock principle of the adversary system." *United States v. Lentz*, 419 F. Supp. 2d 820, 826 (E.D. Va. 2005). Under federal law, the attorney-client privilege is known as the oldest of the privileges for confidential communications. *United States v. Zolin*, 491 U.S. 554, 562 (1989) (internal citation omitted). However, this privilege attaches only to those "communications made in confidence to an attorney by that attorney's client for the purposes of securing legal advice or assistance." *In re Grand Jury Investigation*, 842 F.2d 1223, 1224 (11th Cir. 1987) (citations omitted). The privilege does not apply when the attorney is acting in a ministerial capacity, or as a business agent, rather than a legal adviser. *United States v. Huberts*, 637 F.2d 630, 640 (9th Cir. 1980). Moreover, when communications between a client and his attorney are made in the presence of a third party, the attorney-client privilege generally

6

ceases to apply to those communications.  *United States v. Bennett*, No. CR609-067, 2010 WL 4313905, *5 (S.D. Ga. Oct. 5, 2010) (citing *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir. 1996) and *United States v. Gann*, 732 F.2d 714, 723 (9th Cir. 1984)).[5]

The person invoking the privilege has the burden of proving its existence.  *In re Grand Jury Investigation*, 842 F.2d at 1225 (citation omitted).  "The privilege must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth."  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010) (citation and internal quote marks omitted); *see also In re Grand Jury Investigation*, 842 F.2d at 1225.

*The Recorded Inmate Calls*

Mitchell asserts all recorded calls between himself and Taylor are protected under the attorney-client privilege.  Here again, the undersigned finds Mitchell's claim overstates the extent of the attorney-client privilege.

Testimony during the two evidentiary hearings on the Third Motion establishes that Taylor and Mitchell communicated about possible legal representation, but Taylor was not actually retained (Tr. 1 at 8).  The record also establishes that Mitchell's calls to Taylor on April 29, 2011 were made from the Duval County Jail, which has an long standing policy of recording all outgoing inmate calls.  *See* First Report and Recommendation at 10 (internal citations omitted).  The beginning of every outgoing inmate call is prefaced with a pre-recorded message advising the call will be recorded and third party calls are not

---

[5]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

allowed.  *See, e.g.*, Gov't Ex. 1A, Gov't Ex. 2A.  The policy is also stated in the inmate handbook.  Defendant Ex. 1.  Attorneys have the option of exempting their telephone numbers from the recorded calls.  *See id.*  Having heard the prerecorded statement at the beginning of each outgoing call, both Taylor and Mitchell were aware their phone calls would be recorded.  In fact, Taylor was required to consent to the terms of the call being recorded by dialing a number on her phone before the call would be put through.  *See* Gov't Ex. 1A at 1 (reflecting number on phone pressed to accept the call).

Taylor testified she had no knowledge of the long standing policy that private attorneys may exempt their calls with clients from jailhouse recording if the attorney puts a telephone number on record with the Duval County Jail as an exempt number (Tr. 1 at 14-16).[6]  During the course of the earlier call on April 29, Taylor presumably starts to tell Mitchell that their call falls under the attorney-client privilege when Mitchell interrupts her and says, "Oh God they don't care about that" (Tr. 1 at 2).  Taylor responds by implying that "just like" calls to the Public Defender's Office, other outgoing inmate calls to attorneys may not be used by law enforcement because the calls are privileged.  *See id.*

The extent of the attorney-client privilege, however, is circumscribed by the caveats

---

[6]The Court takes note of Ms. Taylor's testimony that prior to going into private practice in 2010, she worked at the Public Defender's Office (for Florida's 4th Judicial Circuit) for twelve years (Tr. 1 at 14-15).  The Court also takes note that the Jacksonville Sheriff's Office Department of Corrections Inmate Orientation Handbook specifically states, "Any telephone call made from any Department of Corrections facility will be recorded and may be monitored, with the exception of telephone numbers identified as privileged (i.e., Attorneys who request that calls to their numbers not be monitored or recorded, Public Defender, and Federal Public Defenders Office)."  Defendant Ex. 1.  Thus, it appears that the phone number for the office in which Ms. Taylor worked for twelve years, that of the Public Defender, was identified as privileged prior to the 2010 publication date of the Handbook excerpt entered into evidence.

that the communication must be for the purpose of obtaining legal advice and the communication must have been intended to remain confidential between the client and the attorney. *See In re Grand Jury Investigation*, 842 F.2d at 1224. "The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991); *United States v. Gordon-Nikkar*, 518 F.2d 972, 975 (5th Cir. 1975).[7] Thus, Mitchell must establish that his recorded calls to Taylor, were made by him as the client to his attorney for the purpose of obtaining legal advice or services, with the reasonable expectation that the calls would remain confidential between himself and Taylor. *See United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir.1990). For the privilege to apply, Taylor must have been acting in her capacity as a lawyer. *See id.*

Inmate calls made to outside attorneys frequently lose the protection of the attorney-client privilege due to the routine recording of such calls, unless measures to protect the attorney-client confidentiality are taken. Courts have often found that "the presence of the recording device is the functional equivalent of the presence of a third party, such that the attorney-client privilege is destroyed." *United States v. Walker*, No. 2:10cr186-MHT(WO), 2011 WL 2728460, at *2 (M.D. Ala. Jul. 13, 2011) (citing *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003)). Furthermore, when an inmate knows, or has reason to know, that a call made to outside counsel call will be recorded, the inmate loses any reasonable

---

[7]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

expectation of privacy in that call. *See Black v. Attorney General*, No. 6:08-cv-784-Orl-35GJK, 2010 WL 4595661, at *3-4 (M.D. Fla. Nov. 3, 2010) (finding petitioner for habeas corpus relief on basis of ineffective assistance of counsel had no objectively reasonable expectation of privacy in telephone call since he was warned by automated message that his calls were subject to monitoring and he continued the call involving both his attorney and sister despite the warning); *United States v. Landers*, No. 1:12-CR-88-TWT-GGB, 2012 WL 6214627, *4 (N.D. Ga. Nov. 7, 2012) (collecting cases on recorded inmate phone calls not protected by a privilege). *Also see, e.g.*, *United States v. Delibro,* 347 Fed. Appx. 474, 475 (11th Cir. 2009) (per curiam) (finding no error with the district court's denial of the defendant's motion to suppress because the defendant lacked a reasonable expectation of privacy in conversations known to be actively monitored in a police station).[8]  Here, Mitchell's exclamation, "Oh God they don't care about that!" and his earlier statement, "I want to go over something with you real quick without saying too much," demonstrate his foreknowledge that calls he initiated from inside the jail would be recorded, and thus were not private for any purpose.  *See* Gov't Ex. 1A.

Moreover, the calls at issue do not appear to have been made to obtain legal advice or services.  In a singular moment, mid-way through the first call,  Mitchell inquired of Taylor "how easy" she thought his case might be in court.  *Id.* at 4.  Taylor responded only that she didn't "have enough information yet" when the conversation turns back to an individual Mitchell had requested Taylor contact.  *Id.*  In view of the surrounding facts, this

---

[8]*But see Gennusa v. Shoar*, 879 F. Supp. 2d 1337, 1346 (M.D. Fla. 2012) (finding violation of the attorney-client privilege and the Fourth Amendment when attorney and arrestee did not know their private conversations in a sheriff's office interview room would be secretly recorded).

10

brief inquiry is insufficient to raise the veil of attorney-client privilege over the call.

The subject matter of the calls would be wholly unclear to a reasonable person with no prior knowledge of Mitchell's history.  The content of the calls make it clear that Mitchell and Taylor were previously acquainted.  *See, e.g.*, Gov't Ex. 1A at 1-2.  The substance of the calls involves Taylor's communications with individuals Mitchell apparently requested she contact, and a third party call in which Taylor connects to another person on a separate phone and then speaks as an intermediary between Mitchell and that person.  *See generally*, Gov't Ex. 1A and Gov't Ex. 2A.  Giving a very liberal construction to the content of the two calls to Taylor, the Court finds those calls could conceivably concern arrangements for payment of legal fees between Mitchell and Taylor.  However, with limited exception that does not apply in this situation, matters regarding the payment of attorney's fees are not privileged.  *See In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997-98 (11th Cir. 1992).

Additionally, Mitchell was no stranger to policy and procedure at the Duval County Jail, as he had been detained there in July 2010 and December 2010, prior to his re-incarceration in mid-February 2011.  *See* First Report and Recommendation at 5-9, 22-23; Gov't Response at 1.  Thus, Mitchell had been in and out of Duval County Jail on at least three occasions prior to indictment under the current federal charges.  As least at early as February 2011, Mitchell knew his phone calls from the Duval County Jail were being recorded and monitored by law enforcement personnel.

Former Detective Dave Bisplinghoff, of the Jacksonville Sheriff's Office, testified during the May 31, 2012 evidentiary hearing that he had listened to "hundreds of calls of Mr. Mitchell from our jail."  *See* First Report and Recommendation at 6, 22.  While on

11

release from incarceration in early February 2011, Mitchell initiated at least two telephone calls to Special Agent Lawrence Lomonaco of the Untied States Secret Service (*see* Doc. #134-3, Doc. #134-4).  In one of those calls, Mitchell and Lomonaco expressly discussed the fact Lomonaco was listening to some of Mitchell's "jail phone calls" (Doc. #134-4).

The two calls placed to Taylor contained the automated message stating the calls would be recorded.  Gov't Ex. 1A, Gov't Ex. 2A.  Any reasonable expectation of privacy between the attorney and client in those two calls disappeared when Taylor and Mitchell heard the automated warning message and continued the conversations despite the knowledge the calls would be recorded.  Moreover, by the time he made the April 29, 2011 outgoing calls to Ms. Taylor, Mitchell was well aware his jail calls were being recorded and reviewed by law enforcement personnel.[9]  Mitchell implicitly consented to the recording of his phone calls from Duval County Jail by his continued use of the inmate phone system with the prerecorded warning.

*Defendant's Reliance on the Court Order*

Mitchell argues that the April 29 phone calls to Taylor are in a different posture than the December or January phone calls to Newby because Duval County Circuit Court Judge Russell Healy had issued an order on April 13, 2011, modifying some conditions of

---

[9]Under 18 U.S.C. § 2511, no mechanical, electronic, or other device may be used to intentionally intercept any wire communication, including telephone calls, unless a court order has been obtained permitting the intrusion or another statutory exception applies. *United States v. Freeman*, No. 09-80104-CR, 2010 WL 989227, at *6 (S.D. Fla. Mar. 16, 2010).  The exceptions possibly applicable in this circumstance would be the monitoring and recording of calls by a law enforcement agency in the normal course of its duties or consent to the monitoring and recording.  *See id.* at *7.  As jail officers are also law enforcement officers, the monitoring and recording of outgoing inmate calls pursuant to established policy is within the normal course of the officers' duties.  *Id.*  The consent to the policy by the inmates may be implied or explicit.  *See id.*

Mitchell's confinement. The second paragraph of that order states it is ordered and adjudged, "That the Duval County Jail shall immediately allow the Defendant, Donald H. Mitchell, to have telephonic privileges for the purpose of contacting possible new defense counsel to represent him in the above-styled cases." Defendant's Ex. 3. Attorney Taylor testified that she had been in court when Mitchell raised the matter with Judge Healy (Tr. 1 at 22). "I think Mitchell raised to the Judge that he was unable to make phone calls from the jail. And so Judge Healy indicated that the only phone calls he would be allowed to make would be to try and retain an attorney" (Tr. 1 at 27).

The fact a judge ordered jail personnel to permit Mitchell to make outgoing calls in search of new legal representation does not alter Mitchell's knowledge that his calls were recorded, nor his knowledge that law enforcement personnel were reviewing his recorded calls. *See Landers*, 2012 WL 6214627 at *4 (finding inmates lose any privilege attached to recorded phone calls when inmate is aware of the recording beforehand). Moreover, nothing in the State judge's order gives any indication that he was overruling the jail policy on recording inmate calls, or that the jail should not record the calls Mitchell would be permitted to make. *See* Defendant's Ex. 3. The order simply permitted Mitchell to make calls that he previously had been restricted from making. Mitchell had no reasonable expectation of privacy in the phone calls to attorney Michelle Taylor that the United States seeks to introduce into evidence.

<u>Defendant's Reliance on Attorney's Statements</u>

Arguably, attorney Taylor implied to Mitchell that their phone conversations, even if recorded, would be privileged. *See* Gov't Ex. 1A. Mitchell, however, may not rely on Ms. Taylor's statements to shield these phone calls from disclosure and potential use as

13

evidence. While a client's reasonable beliefs may be relevant to application of the attorney-client privilege in some circumstances, such a circumstance is not present in this case. *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923-24 (8th Cir. 1997) (discussing situations in which a client's reasonable, but mistaken, belief a conversation was within the attorney-client privilege would render the conversation confidential). Reasonable mistakes of fact, such as the belief that a "poseur was in fact a lawyer," may protect a communication. *Id.* However, there is no authority "holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one." *Id.* at 923. Similarly, an attorney's reasonable mistake of law does not apply in the realm of privileges to insulate a non-privileged conversation from disclosure. *Id.* at 923-24. Taylor's statement of "just like ... any calls to the P.D.'s office" is her mistaken assertion of the law surrounding the attorney-client privilege. Gov't Ex. 1A at 2.

**Conclusion**

In summary, Mitchell made at least two telephone calls to a person he knew to be a lawyer, when he knew the calls would be recorded by the corrections officers at the jail. Mitchell continued with the calls despite that knowledge. It is questionable whether the contested telephone calls were made to obtain legal advice or services, but Mitchell waived all reasonable expectation of privacy in the phone calls to Taylor. Thus, the calls should not be suppressed since the recordings properly were made in the normal course of the officers' duties at the jail and Mitchell had full knowledge his calls were not confidential and were, in fact, being recorded and reviewed by law enforcement officials.

## V. Recommendation

For the above discussed reasons, the undersigned respectfully recommends Defendant Donald Mitchell's Authorized Third Motion to Suppress (Doc. #189) be **DENIED.**

**DONE AND ENTERED** at Jacksonville, Florida this 22nd day of February, 2013.

_____
THOMAS E. MORRIS
United States Magistrate Judge

Copies to:

The Hon. Marcia Morales Howard

Asst. U. S. Attorney (Robinson)

Noel Lawrence, Esquire