# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                CASE NO: 3:11-cr-248-J-34JRK

DONALD MITCHELL                    ORDER ON MOTION FOR
                                                    SENTENCE REDUCTION UNDER
                                                    18 U.S.C. § 3582(c)(1)(A)

_____

# O R D E R

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for

a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the

factors identified in 18 U.S.C. § 3553(a) and the applicable policy statements issued

by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED after complete review of the motion on the merits.

☒ FACTORS CONSIDERED

Defendant Donald Mitchell is a 44-year-old inmate incarcerated at Tucson

USP, serving concurrent 180-month terms of imprisonment for wire fraud and

conspiracy to commit mail fraud. (Doc. 345, Judgment). According to the Bureau of

Prisons (BOP), he is scheduled to be released from prison on May 1, 2025. Mitchell

seeks compassionate release because of the Covid-19 pandemic and because he claims

to have various underlying conditions, including chondrosarcoma (bone cancer) of the

scapula, arthropathy, osteophytes (bone spurs), a history of kidney cancer, leukopenia

(which reduces the white blood cell count), asthma, obesity, coughing up blood, and

mental health disorders. (Doc. 406, Motion for Compassionate Release; Doc. 406-1 through 406-4, Def. Ex. A through D). The United States has responded in opposition (Doc. 409, Corrected Response with Exhibits), and Mitchell has filed a reply (Doc. 410, Reply; Doc. 410-1, Reply Exhibit A).

A movant for compassionate release bears the burden of proving that a reduction in sentence is warranted. United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. Jun. 7, 2019); cf. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (a movant under § 3582(c)(2) bears the burden of proving that a sentence reduction is appropriate). "Given the permissive language [of § 3582(c)(1)(A)], a district court's decision whether to grant or deny a defendant's request for a sentence reduction is discretionary." United States v. Winner, No. 20–11692, 2020 WL 7137068, at *2 (11th Cir. Dec. 7, 2020). As the Third Circuit Court of Appeals has observed, the mere existence of Covid-19 cannot independently justify compassionate release, "especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

The medical records bear out that Mitchell has a number of medical conditions, including chondrosarcoma of the scapula, obesity, asthma, a mass on the kidney (which was treated with ablation), a history of vomiting or coughing up blood (which may have been caused by an ulcer or esophageal lesions), and schizophrenia. Def. Ex. A (Medical Records) at 2-12, 32-40, 68-89. Mitchell's most serious current condition appears to be chondrosarcoma, about which the records present conflicting

information. According to records from Elaine York, M.D. (a BOP physician), Banner Health, and Tucson Medical Center, the tumor is a "low-grade" chondrosarcoma with no evidence of metastasis. Id. at 3, 51-53, 77, 85. But according to other records, the chondrosarcoma has metastasized and is either "fatal" or "terminal." Id. at 74, 79; Reply Ex. A at 2. However, the most dire descriptions of Mitchell's cancer are contained in physical therapy treatment notes – not an oncologist's report – and may have been based on Mitchell's own description of his condition, the credibility of which is suspect.[1]

For purposes of this Order, the Court assumes that Mitchell's conditions are sufficiently serious that he has established extraordinary and compelling reasons for a sentence reduction. See 18 U.S.C. § 3582(c)(1)(A). Notably, however, Mitchell has been offered surgery to remove the tumor from his scapula, but "he refused surgery

---

[1]     Whether because of his tendency to deceive or because of mental health disorders, Mitchell is not a reliable source. Mitchell has a documented history of providing healthcare staff with inconsistent information. Def. Ex. A at 36, 43-44. For example, he has told BOP healthcare staff that he has cancer "all over" his body, id. at 55, but records do not quite support this claim. Mitchell told one healthcare worker that his entire family died of cancer and that he grew up near a nuclear power plant in Oakridge, Tennessee. Id. at 53. But he told another BOP employee that he grew up in Brazil. Id. at 36. According to the Presentence Investigation Report (Doc. 337, PSR), Mitchell never lived in Tennessee or Brazil, and as of the PSR's preparation, his parents and siblings were all alive. Id. at ¶¶ 108-119. Mitchell told healthcare workers that his father died at age 35 due to profuse bleeding in his lungs. Def. Ex. A at 33. But according to the PSR, his father (Donel Heflin, then aged 55) was alive and working in Atlanta, Georgia, for the Coca-Cola Company and as a part-time pastor. PSR at ¶ 110. Mitchell also reported to BOP staff that his mother died of lung cancer in her 40's. Def. Ex. A at 36. According to the PSR, his mother (Juanita Mitchell, then aged 56) was alive and living in Orlando, Florida. PSR at ¶ 111. At one point, Mitchell told BOP physical therapists that he needed a four-wheel walker, but then he was observed playing softball. Def. Ex. At 79. Given his tendency to deceive and exaggerate, Mitchell cannot be considered a reliable source of information.

on the planned day because he felt he had not had adequate conversations with his primary care provider regarding 'aftercare,' specifically stating he had questions about what cast was to be used post-op and physical rehabilitation." Def. Ex. A at 60. Mitchell "continues to refuse testing/evaluations for … cancer of the L scapula region." (Doc. 409-2). The records further reflect that Mitchell has a history of malingering, exaggerating symptoms, and providing inaccurate information. Def. Ex. A at 3, 7, 36-37, 43-44. Despite his various ailments, the record does not support a conclusion that Mitchell's condition is so severe that he is unable to care for himself, that he is at risk of imminent death, or that the BOP is unresponsive to his medical needs.

With respect to Covid-19, Mitchell contracted and recovered from the virus in October 2020. See Response at 17-19; Def. Ex. A at 12, 91. The parties dispute whether Mitchell is susceptible to reinfection. Early data suggests that reinfection with Covid-19 is possible.[2] Other data suggests that immunity to Covid-19 may last several years following infection.[3] But whether or not Mitchell is susceptible to reinfection, his recovery is significant because it demonstrates that he can tolerate and recover from coronavirus. "Fortunately, therefore, the record refutes any dire prediction that Defendant would succumb to coronavirus were he to contract it." United States v. Jones, No. 3:09-cr-131-HES-MCR, D.E. 275 at 3 (M.D. Fla. Sept. 29,

---

[2]    "Coronavirus Reinfections are Real, but Very, Very Rare," Oct. 13, 2020. https://www.nytimes.com/2020/10/13/health/coronavirus-reinfection.html.

[3]    https://www.usnews.com/news/health-news/articles/2020-11-17/immunity-to-coronavirus-could-last-years-study-finds.

2020). Mitchell submits no evidence that he suffers lingering effects from the prior Covid-19 infection, and his fear of experiencing a serious reinfection is only speculative.[4]

Finally, and in any event, the sentencing factors under 18 U.S.C. § 3553(a) do not support a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. Under § 3553(a), the Court must consider, among other things, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, care, or correctional treatment; the kinds of sentences available; as well as the sentencing range established by the sentencing guidelines. 18 U.S.C. § 3553(a).

Mitchell proved to be a cunning con artist, swindling eight victims out of $96,050 by convincing them he was a successful investor. (See Doc. 272, Notice of Maximum Penalties and Factual Basis at 5-22); PSR at ¶¶ 16-59. In doing so, Mitchell deprived people of savings they had taken a lifetime to earn. Mitchell manipulated (or tried to manipulate) the victims, law enforcement officers, and investigators along the way. (See Doc. 362, Sentencing Transcript at 185, 197, 207-10, 260, 271). He even

---

[4]      The Court recognizes there is a split of authority over whether district courts are bound by the list of extraordinary and compelling reasons contained in U.S.S.G. § 1B1.13, cmt. 1(A)-(D). See, e.g., United State v. Ruffin, 978 F.3d 1000, 1006–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020). The Court's decision does not depend on the resolution of that issue because it would reach the same conclusion if it had independent authority to identify extraordinary and compelling reasons.

managed to recruit an attorney to interact with the victims so as to give his fraudulent scheme the appearance of legitimacy. One of the victims – speaking anonymously for fear of retaliation – wrote the Court to express the "strongest opposition" to Mitchell's release. (Doc. 409-8, Victim Letter).

Prior to this case, Mitchell accumulated a lengthy criminal record, which consisted of 16 adult convictions, including a prior federal conviction for bank fraud. PSR at ¶¶ 73-94. As the Court remarked at sentencing, Mitchell has been relentless in committing crime: within months of being released from one term of imprisonment he would commit a new crime, and in some instances he began committing the next crime while still on probation or in jail for the previous crime. Sentencing Tr. at 265-66. Mitchell's prior convictions earned him 28 criminal history points under the United States Sentencing Guidelines, far beyond the 13 points required to qualify for Criminal History Category VI. See PSR at ¶¶ 95, 96. Indeed, the Court determined that a five-level upward departure under U.S.S.G. § 4A1.3 was appropriate because Criminal History Category VI underrepresented the severity of Mitchell's criminal history. (Doc. 347, Statement of Reasons); Sentencing Tr. at 264-67. The Court further determined that, based on the egregiousness of the offense, Mitchell's history and characteristics, and his lack of genuine acceptance of responsibility, an upward variance to a term of 180 months in prison was appropriate. Sentencing Tr. at 268-72. The Eleventh Circuit Court of Appeals eventually affirmed Mitchell's conviction and sentence. United States v. Mitchell, 617 F. App'x 976 (11th Cir. 2015).

Compounding matters, Mitchell's time in BOP custody has resulted in a

significant disciplinary record. Mitchell has incurred more than a dozen infractions during his current term of imprisonment, the most recent one occurring in 2020. (Doc. 406-2, Def. Ex. B at 2-3; Doc. 409-7, BOP Disciplinary History at 1-7). Mitchell has been sanctioned for such things as refusing to obey an order, insolence to staff members, lying or falsifying a statement, threatening bodily harm, assault without serious injury, fighting, and possessing a dangerous weapon. Mitchell's disciplinary record not only reflects a lack of rehabilitation, but also suggests that his medical conditions do not prevent Mitchell from engaging in unlawful or antisocial conduct.

According to the BOP, Mitchell has more than four years remaining on his sentence. In view of all the § 3553(a) factors, reducing Mitchell's sentence is not warranted at this time. See United States v. Chambliss, 948 F.3d 691, 693-94 (5th Cir. 2020) (affirming denial of motion for compassionate release, where inmate had terminal liver cancer, based on the gravity of the offense and the amount of time remaining on his sentence). Accordingly, upon review of the parties' arguments and the record, Mitchell's pro se Motion for Compassionate Release (Doc. 403) and counseled Motion for Compassionate Release (Doc. 406) are **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 28th day of January, 2021.

*Marcia Morales Howard*

**MARCIA MORALES HOWARD**
United States District Judge

lc 19
Copies:
Counsel of record
Defendant